UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| LARRY EUGENE LATHAM, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | 1:14-cv-607-SEB-DML |
| ) | |
| WILLIAM WOLFE, et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

**Entry Discussing Defendants Wolfe and Mitcheff's Motion for Summary Judgment**

Plaintiff Larry Latham, a former inmate of the Pendleton Correctional Facility ("Pendleton"), brings this action pursuant to 42 U.S.C. § 1983 alleging that the defendants were deliberately indifferent to his serious medical need for treatment of chest pain in violation of his Eighth Amendment rights. Defendants Drs. William Wolfe and Michael Mitcheff move for summary judgment.

**I. Summary Judgment Standard**

Summary judgment shall be granted where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). In ruling on a motion for summary judgment, the Court must view the evidence in the light most favorable to the nonmoving party. *SMS Demag Aktiengesellschaft v. Material Scis. Corp.*, 565 F.3d 365, 368 (7th Cir. 2009). All inferences drawn from the facts must be construed in favor of the non-movant. *Moore v. Vital Prods., Inc.,* 641 F.3d 253, 256 (7th Cir. 2011). To survive summary judgment, the "nonmovant must show through specific evidence that a triable issue of fact remains on issues on which he bears the burden of proof at trial." *Warsco v. Preferred Technical Grp.,* 258 F.3d 557, 563 (7th Cir. 2001) (citing *Celotex Corp. v. Catrett*, 477

U.S. 317, 324 (1986)). If the evidence on record could not lead a reasonable jury to find for the non-movant, then no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. *See McClendon v. Ind. Sugars, Inc.*, 108 F.3d 789, 796 (7th Cir. 1997). At the summary judgment stage, the court may not resolve issues of fact; disputed material facts must be left for resolution at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986).

## II. Undisputed Facts

At all times relevant to his Complaint, Mr. Latham was an inmate in the custody of the Indiana Department of Correction and was housed at Pendleton.

At all times relevant to Mr. Latham's Complaint, Dr. Mitcheff was the Regional Medical Director for Corizon, Inc., f/k/a Correctional Medical Services, Inc. ("Corizon"), the company that contracts with the Indiana Department of Correction to provide medical care to various prisons throughout Indiana. Dr. Mitcheff currently serves as the Chief Medical Officer for the Indiana Department of Correction.

As Regional Medical Director for Corizon, Dr. Mitcheff hired facility physicians, reviewed requests for non-formulary medications, reviewed requests for outside consultations, and made alternative treatment suggestions, if appropriate, among other things. Dr. Mitcheff was not involved in scheduling outside consultations or other medical appointments.

The course of treatment for a particular offender is decided by the treating physician at the prison facility. As Regional Medical Director for Corizon, Dr. Mitcheff did not make treatment decisions for inmates. Rather, he reviewed requests from facility physicians and occasionally provided guidance and alternative treatment suggestions. The facility physician still had the ultimate determination as to what course of treatment to pursue for a particular inmate. Dr.

Mitcheff did not personally treat Mr. Latham for any of his alleged injuries related to his Complaint.

Dr. Wolfe started at the Pendleton Correctional Facility on January 1, 2010 and first saw Mr. Latham on April 27, 2010 to monitor his chronic conditions, including asthma, hypertension, high cholesterol and atherosclerosis (a buildup of plaque in the arteries). Mr. Latham has a history of coronary artery disease. He was already taking nitroglycerin as needed for occasional chest pain and Plavix (a blood thinner) to help prevent a heart attack. His hypertension and asthma were well-controlled and Dr. Wolfe continued his current medications and scheduled him to be seen for follow up on his cardiac condition. On May 4, 2010, Dr. Wolfe ordered Mr. Latham a bottom bunk pass due to his health issues.

Dr. Wolfe next saw Mr. Latham on June 16, 2010. At that time, Mr. Latham relayed some episodes of left-sided numbness lasting a few minutes, but it had not occurred for 3-4 weeks. In response, Dr. Wolfe ordered labs and prescribed metformin due to Mr. Latham's previously elevated blood sugar levels and A1C results (a test measuring blood glucose levels), and Dr. Wolfe also ordered daily glucose monitoring for three weeks. Dr. Wolfe also discussed with Mr. Latham the potential dangers of noncompliance with his medications.

On July 16, 2010, Dr. Wolfe saw Mr. Latham for a Chronic Care visit. At that time, his atherosclerosis was stable and his diabetes, asthma, and hypertension were under good control. Dr. Wolfe continued Mr. Latham's current medications and ordered additional labs. On August 2, 2010, Dr. Wolfe ordered a refill of Mr. Latham's Plavix. On September 17, 2010, Mr. Latham refused to have his blood drawn to obtain labs.

On October 26, 2010, Bonnie Neff, APN saw Mr. Latham for a Chronic Care visit. At that time, Mr. Latham relayed no recent complaints of chest pain. Additional labs were ordered and his

3

medications were continued. On January 16, 2011, Dr. Wolfe ordered a refill of Mr. Latham's medications, including Zocor and Lopid, both of which aim to reduce cholesterol levels and the likelihood of a cardiac incident.

Dr. Wolfe next saw Mr. Latham on February 3, 2011. Mr. Latham's hypertension, asthma and diabetes were under control and his cardiac issues were well controlled while taking Plavix. Therefore, Dr. Wolfe reordered Plavix for Mr. Latham. Additionally, Mr. Latham only rarely had to rely on nitroglycerin for occasional chest pain. On May 12, 2011, Dr. Wolfe saw Mr. Latham for follow up. At that time, Mr. Latham's atherosclerosis was stable and he had not experienced a bout of chest pain since March, 2011, which had been controlled with just a single tab of Nitroglycerin. Because of this, Dr. Wolfe believed it was not necessary to refer Mr. Latham to an outside specialist. Dr. Wolfe continued Mr. Latham's medications, including his Plavix, ordered labs, and referred him to the optometrist for an eye exam due to his diabetes.

On August 29, 2011, Mr. Latham refused to be seen by Dr. Wolfe for his Chronic Care visit. Despite Mr. Latham refusing his Chronic Care visit, on August 30, 2011, Dr. Wolfe ordered a refill of Mr. Latham's Plavix.

Mr. Latham saw several different providers at Pendleton over the next several months for his healthcare. On May 21, 2012, Dr. Wolfe reordered Mr. Latham's Plavix. On May 30, 2012, Dr. Wolfe changed Mr. Latham's angina (chest pain) medication due to a back order issue with the manufacturer and because Dr. Wolfe did not want Mr. Latham to be without his medication.

Dr. Wolfe next saw Mr. Latham for his cardiac related conditions on June 28, 2012. Mr. Latham was receiving several cardiac related medications at that time, and his hypertension, asthma and diabetes were under good control. Dr. Wolfe ordered additional labs and continued

Mr. Latham's current medications. Nothing about Dr. Wolfe's assessment of Mr. Latham at that time necessitated referral to an outside specialist.

On August 2, 2012, Mr. Latham presented to medical with complaints of chest pain and radiation. Dr. Wolfe was not at the facility at that time. Dr. Wolfe was contacted by nursing staff and ordered Aspirin, Motrin, and an EKG. EKG results confirmed a normal sinus rhythm and nonspecific T wave changes. Therefore, Dr. Wolfe did not believe that it was necessary to send Mr. Latham to the hospital at that time, especially when it was reported to Dr. Wolfe that Mr. Latham's symptoms were improving. On September 28, 2012, Dr. Wolfe saw Mr. Latham for a Chronic Care visit. Dr. Wolfe discussed Mr. Latham's recent EKG results and how it had not changed from previous tracings. Mr. Latham's diabetes and hypertension were under good control. His heart rate and rhythm were regular, he displayed no heart murmurs and his overall cardiac exam was normal. Dr. Wolfe continued his current medications and ordered labs.

On October 18, 2012, Mr. Latham presented to medical with complaints of chest pain which had not been relieved by nitroglycerin. Mr. Latham received oxygen and Aspirin, and when EKG results confirmed an elevated ST pattern when compared to his prior results, he was immediately transferred to St. John's Hospital for further evaluation and treatment. From St. John's Hospital, Mr. Latham was transferred to St. Vincent Hospital for further assessment. While at St. Vincent, physicians recommended a left heart catheterization and LCA (left coronary artery) stent placement. Mr. Latham was discharged back to prison in good condition on October 22, 2012 with instructions to return to the cardiologist for follow-up.

Dr. Wolfe next saw Mr. Latham on November 6, 2012 to follow up on his stent placement. Mr. Latham had a pending cardiology follow-up scheduled, and Dr. Wolfe renewed his order for Plavix. Due to Mr. Latham becoming aware of his off-site cardiology appointment, it had to be

rescheduled. Then, St. John's cardiology rescheduled Mr. Latham's appointment for December 10, 2012.

On December 10, 2012, Mr. Latham presented to cardiologist, Dr. Phillip Lee. Dr. Lee noted that Mr. Latham felt better and that his intermittent chest discomfort was "significantly better" than the chest pain he was experiencing prior to undergoing stent placement in October 2012. Dr. Lee suggested increasing Mr. Latham's Imdur (isosorbide mononitrate – to treat chest pain) to 90 mg and to continue his other medications as is. On December 11, 2012, Dr. Wolfe increased Mr. Latham's isosorbide mononitrate to 90 mg. On January 7, 2013, Dr. Wolfe evaluated Mr. Latham, ordered labs, and renewed his medications. On March 4, 2013, Dr. Wolfe reordered Mr. Latham's Plavix.

On April 1, 2013, Dr. Wolfe saw Mr. Latham for a Chronic Care visit. At that time, Mr. Latham had no complaints of pressure-type chest pain or orthopnea (shortness of breath while lying flat). He displayed no cardiac related concerns, his asthma was under control, his lipids were improving, and Dr. Wolfe continued his current medications, ordered labs and an 1800 calorie ADA diet. On June 18, 2013, Dr. Wolfe ordered Zocor 40 mg for Mr. Latham for better cholesterol control.

Dr. Wolfe's last assessment of Mr. Latham occurred on June 24, 2013. At that time, his asthma and hypertension were under good control. Mr. Latham relayed some chest discomfort after heavy exercising, which he could resolve with nitroglycerin. In response, Dr. Wolfe ordered a new EKG and labs. On July 8, 2013, Mr. Latham refused his Annual Health Screen. On August 23, 2013, Mr. Latham complained of chest pain to a correctional officer yet refused to be seen by medical.

Dr. Wolfe left the Pendleton Correctional Facility on September 13, 2013 and had no further involvement in Mr. Latham's care.

Over the course of Dr. Wolfe's care of Mr. Latham, from April 2010 through June 2013, Dr. Wolfe performed numerous physical examinations of Mr. Latham, provided him with appropriate cardiac medications, and ordered EKGs and referred him out when necessary. On October 22, 2012, Dr. Mitcheff received a consultation request for Mr. Latham to see an outside cardiologist due to his recent cardiac issues. Dr. Mitcheff agreed with that recommendation.

On November 22, 2013, Dr. Mitcheff received a consultation request from Mr. Latham's prison doctor for a cardiology consultation due to Mr. Latham's unstable angina and increased use of nitroglycerin. Dr. Mitcheff agreed with the recommendation.

On January 3, 2014, Dr. Mitcheff received a non-formulary medication request from Mr. Latham's doctor for Ranexa, which is used to treat angina. Dr. Mitcheff suggested that the on-site provider first convert Mr. Latham's nitrate medications to DOT (direct observation therapy), as opposed to KOP (keep on person), to ensure that he was compliant with them. It was also Dr. Mitcheff's opinion that adding Ranexa would not provide an additional benefit for Mr. Latham as he was already being prescribed isosorbide mononitrate for chest pain.

On January 20, 2014, Dr. Mitcheff received a consultation request from Latham's doctor for a cardiology consultation and left heart catheterization. The doctor informed Dr. Mitcheff that Mr. Latham's medications had been changed to DOT (direct observation therapy) with no change in his symptoms. Dr. Mitcheff agreed with the recommendation. Dr. Mitcheff had no further involvement with consultation requests for Mr. Latham.

Dr. Mitcheff's opinion that adding Ranexa would not provide an additional benefit to Mr. Latham's health was not monetarily based, but was instead based upon the assessments that Dr.

7

Mitcheff received from Mr. Latham's treating physicians, Dr. Mitcheff's concern to first ensure that Mr. Latham was compliant with his current medications, along with Dr. Mitcheff's experience, education, training and judgment as a physician with cardiac training and experience. In Dr. Mitcheff's professional opinion, Mr. Latham received appropriate medical care for his cardiac and other health issues, and Dr. Mitcheff was in no way deliberately indifferent to his medical needs.

### III. Discussion

Mr. Latham claims that the defendants violated his right to adequate medical care. To support a claim that there has been a violation of this right, a plaintiff must demonstrate two elements: (1) an objectively serious medical condition; and (2) deliberate indifference by the prison official to that condition. *Johnson v. Snyder,* 444 F.3d 579, 584 (7th Cir. 2006).

As to the first element, "[a]n objectively serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *King v. Kramer,* 680 F.3d 1013, 1018 (7th Cir. 2012) (internal quotation omitted). The defendants do not dispute that Latham has an objectively serious medical condition. As to the second element, "[t]o show deliberate indifference, [Latham] must demonstrate that the defendant was actually aware of a serious medical need but then was deliberately indifferent to it." *Knight v. Wiseman,* 590 F.3d 458, 463 (7th Cir. 2009). This requirement is satisfied when a prison official "fail[s] to act despite his knowledge of a substantial risk of serious harm" to a prisoner. *Farmer v. Brennan,* 511 U.S. 825, 841 (1994).

A court examines the totality of an inmate's medical care when determining whether prison officials have been deliberately indifferent to an inmate's serious medical needs. *Reed v. McBride,* 178 F.3d 849, 855 (7th Cir. 1999). Adequate medical care may involve care that the prisoner

disagrees with; this disagreement alone is insufficient to establish an Eighth Amendment violation. *See Pyles,* 771 F.3d at 409. To establish deliberate indifference, the prisoner must demonstrate "that the treatment he received was 'blatantly inappropriate,'" *id.* (quoting *Greeno v. Daley,* 414 F.3d 645, 654 (7th Cir. 2005)); or, stated another way, that the treatment decision "represents so significant a departure from accepted professional standards or practices that it calls into question whether the [medical professional] was actually exercising his professional judgment," *id.* (citing *Roe v. Elyea,* 631 F.3d 843, 857 (7th Cir. 2011) and *Sain v. Wood,* 512 F.3d 886, 895 (7th Cir. 2008)); *Gayton,* 593 F.3d at 622–23.

    A. *Dr. Wolfe*

Dr. Wolfe argues that he was not deliberately indifferent to Mr. Latham's serious medical needs because he performed numerous physical exams of Mr. Latham, routinely followed and monitored his cardiac and chronic health conditions, provided him with appropriate medications, and ordered EKGs when necessary. Mr. Latham argues that Dr. Wolfe was aware of his chest pain but did not properly treat it.

Throughout the course of Dr. Wolfe's care of Mr. Latham, Dr. Wolfe used his medical judgment and monitored Mr. Latham's condition on a routine basis through numerous physical examinations, follow-ups, and outside referrals when indicated. The designated evidence shows that Dr. Wolfe considered Mr. Latham's complaints and provided testing and treatment for his conditions. When Mr. Latham's condition worsened, Dr. Wolfe sent him to the hospital for treatment.

Dr. Wolfe has shown, and Mr. Latham has failed to dispute, that he was not deliberately indifferent to his serious medical needs. Dr. Wolfe did not ignore Mr. Latham's complaints or

provide him care that was blatantly inappropriate. Dr. Wolfe is therefore entitled to summary judgment on Mr. Latham's claims.

B. *Dr. Mitcheff*

Dr. Mitcheff also argues that he was not deliberately indifferent to Mr. Latham's serious medical needs. Mr. Latham contends that Dr. Mitcheff "refused" him medication as recommended by the "heart specialist."

Dr. Mitcheff has shown that he was not deliberately indifferent to Mr. Lathams' serious medical needs. Dr. Mitcheff's involvement in Mr. Latham's care was limited to a few consultation and medication requests from Mr. Latham's on-site physicians. Dr. Mitcheff approved consultation requests from Mr. Latham's prison providers. When Dr. Mitcheff received a non-formulary medication request from Mr. Latham's doctor for Ranexa, which is used to treat angina, Dr. Mitcheff suggested that the doctor first convert Mr. Latham's nitrate medications to DOT (direct observation therapy), as opposed to KOP (keep on person), to ensure that he was compliant with them. It was also Dr. Mitcheff's opinion that adding Ranexa would not provide an additional benefit for Mr. Latham as he was already being prescribed isosorbide mononitrate for chest pain.

Mr. Latham's argument that Dr. Mitcheff refused to provide him with appropriate medication is insufficient to dispute the evidence that Dr. Mitcher was not deliberately indifferent to his serious medical needs. Dr. Mitcheff considered the request for Ranexa and determined that Mr. Latham's nitrate medications should be directly observed and decided that Mr. Latham was already being treated for chest pain. Mere differences of opinion among medical personnel regarding the appropriate course of treatment for a patient do not give rise to deliberate indifference. *Estate of Cole v. Fromm,* 94 F.3d 254, 261 (7th Cir. 1996). Dr. Mitcheff is therefore entitled to summary judgment on Mr. Latham's claims against him.

IV. Conclusion

The motion for summary judgment filed by Dr. Wolfe and Dr. Mitcheff [dkt 56] is granted. The motion to strike [dkt 77] is **denied**. No partial final judgment shall issue as to the claims resolved in this Entry.

**IT IS SO ORDERED.**


Date: _____06/16/2015_____

_____
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana


Distribution:

All electronically registered counsel

Larry Eugene Latham
971361
New Castle Correctional Facility
1000 Van Nuys Road
New Castle, IN 47362